

FILED & JUDGMENT ENTERED
Steven T. Salata

Apr  15  2011

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



_____
J. Craig Whitley
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

| | |
|---|---|
| In re: ) | |
| ) | **Case No. 08-31158** |
| S & A DENNIS ENTERPRISES, INC. ) | **Chapter 7** |
| d/b/a YOUR DOLLAR STORE WITH MORE, ) | |
| ) | |
| Debtor. ) | |
| ) | |

| | |
|---|---|
| In re: ) | |
| ) | **Case No. 09-32364** |
| DALE FORREST STUPKE, ) | **Chapter 7** |
| ) | |
| Debtor. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** was before this Court upon objections filed by the Chapter 7 Trustee ("Trustee") to proofs of claim filed in these two cases by American InfoSource LP, as agent for FIA Card Services, NA/Bank of America ("AIS/FIA"). Specifically, the Trustee has objected to Claim No. 4 in the Stupke case and Claims Nos. 5 and 6 in the S & A Enterprises, Inc. case, for an alleged lack of documentation to support the claims. AIS/FIA has responded in each instance denying the Trustee's assertion. The cases

involve the same parties and substantially identical claims and objections, such that the matters have been consolidated for hearing and decision.

I.   **Background**

   A.   **Stupke**

Dale Forest Stupke ("Stupke") filed his Chapter 7 petition on August 31, 2009 and the Trustee was appointed to administer the Stupke estate. Stupke's petition scheduled a credit card debt of $9,306.91 owed to Bank of America with an account ending in 6232. Stupke did not indicate that the claim was disputed, unliquidated, or contingent.

On October 14, 2010, American InfoSource LP ("AIS") filed a two-page proof of claim (Claim No. 4) for $9,377.43 in Stupke's case, ostensibly on behalf of FIA Card Services, NA/Bank of America ("FIA") (together, "AIS/FIA"). The first page of that claim (the completed Official Form 10) lists the following information: the claim date; AIS/FIA's name and address; the assertion that the claim is for credit card charges; the last four digits of Stupke's account number, and the four digit number by which the claimant identifies the debtor. The block on the form where the claimant is to indicate whether its claim includes interest or other charges in addition to principal is unmarked.

There is a second page attached to the claim entitled "Statement of Accounts." This page reiterates the information previously disclosed on the claim form and/or in Stupke's bankruptcy schedules: the claim date, AIS/FIA's name and address, the last four digits of the account number, Stupke's address, his bankruptcy case number, and the account balance. The only new information found in this document is an internal reference number and the date on which the account was opened. Although Official

2

Form 10 instructs the creditor to attach an itemized statement of all interest or additional charges, AIS/FIA has not done so.

The Trustee objected to Claim No. 4 due to the claimant's failure to attach original source documents to its claim in derogation of "the Federal Bankruptcy Rules and Official Form No. 10." ECF No. 20. Afterward, AIS/FIA amended its proof of claim by attaching copies of Stupke's last three credit card statements. The June 2009 statement reflects an outstanding balance of $9,233.39; the July statement, a balance of $9,306.91 (the same amount scheduled in Stupke's petition); and the August statement, a $9,377.43 balance.

### B.    S & A Dennis Enterprises, Inc.

S & A Dennis Enterprises, Inc. ("S&A") filed its Chapter 7 petition on June 6, 2008. S&A's petition lists two debts owed to Bank of America relating to business credit cards, one of $43,741.19 and the other of $60,714.80. While S&A did not schedule either debt as disputed, unliquidated, or contingent, the debtor also did not provide account numbers for either debt. Again, R. Keith Johnson was appointed Chapter 7 Trustee for the S&A estate.

American InfoSource then filed Proofs of Claim Nos. 5 and 6 against the S&A estate, as "Agent for FIA Card Services, NA/Bank of America" and in the amounts of $44,893.04 and $60,714.80, respectively. These claims mirror those filed in Stupke. On the face of these claims, AIS/FIA provides the claimant's address and the last four digits of an internal identification number, which also appear to be the last four digits of the borrower's account number. The block on the form where the claimant is to indicate

whether the claim includes interest or other charges in addition to principal is again unchecked.

Attached to each claim is another one-page "Statement of Accounts," in the same format as the one filed in Stupke's case and containing as little new information.  The claim date, claimant's name and address, the debtor's address, the case numbers, the last four digits of the account numbers, and the account balances are stated.  Again, the only additional information found in these Statements of Accounts is an internal reference number and the date the account was opened.  There are no itemized statements of interest and additional charges in these attachments.

However, the claim amount in Claim No. 6 precisely matches the amount listed by S&A in its schedules as owing to Bank of America, $60,714.80.  The amount claimed in Claim No. 5 is somewhat ($1,151.85) higher than the scheduled debt (i.e., scheduled debt of $43,741.19 versus a claim of $44,893.04).

The Trustee also objected to the AIS/FIA claims due to a lack of documentation to establish liability and to support the amounts claimed.  Again, the claimant responded by amending its claims to attach account statements.  Attached to amended Claim No. 5 is a copy of S&A's August 2008 Bank of America business card account statement; the September 2008 statement is provided for the account involved in Claim No. 6.

## II.  STATEMENT OF POSITIONS

Each party considers the other's actions in this case to be unreasonable and unfairly costly to themselves.

Because Official Form 10 permits a creditor to support its claim with a "summary," AIS/FIA contends that all of its original claims are in substantial compliance

4

with Rule 3001 and are presumptively valid under Rule 3001(f).  According to AIS/FIA, the Trustee's naked "insufficient documentation" objection does not refute the presumption of validity.  However, if there were any doubt, AIS/FIA believes it resolved those questions by providing the underlying account statements in its amended claims.  It accuses the Trustee of running up its costs by refusing to withdraw his objections after the amended claims were filed.

The Trustee agrees that the parties' costs have been unreasonably increased, but he blames AIS/FIA's claims practices.  The Trustee believes AIS/FIA purposely files claims lacking the information required by Rule 3001 and Official Form 10 in order to reduce its costs.  The claims are so bereft of information that a third party cannot ascertain whether a debt is owed, the amount thereof, or whether the claimant is the holder of the debt.  Even if AIS/FIA's amended claims cured these problems (the Trustee maintains that they did not), the claimant's practice of "filing first, documenting later" unnecessarily burdens trustees and other parties reviewing claims with the costs of investigating and filing claims objections to these deficient claims.

Thus, the current dispute presents several related questions:

1.  Were the original AIS/FIA proofs of claim executed and filed in accordance with Rule 3001 and Official Form 10?

2.  If not, did the amendments to these claims satisfy these requirements?

3.  If neither the original nor the amended claims were compliant with Rule 3001 and Official Form 10, should these claims be disallowed under Section 502?

4.  Should sanctions be imposed upon a claimant who makes a practice of filing deficient claims?

### III. DISCUSSION

#### A. Background

In Chapter 7 and 13 cases, a party must file a proof of claim to receive a distribution from the bankruptcy estate. Fed. R. Bank. P. 3002(a). A proof of claim may only be filed by a "creditor or the creditor's authorized agent." Fed. R. Bankr. P. 3001(b). A properly supported proof of claim serves as "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Rule 3001(c) specifies how the claim is to be supported. When "based on a writing," the original or duplicate must be filed with the proof of claim. Fed. R. Bank. P. 3001(c). If that writing has been lost or destroyed, "a statement of the circumstances of the loss or destruction shall be filed with the claim." Id.

Additionally, Item 7 of Official Form 10, the proof of claim form, requires the claimant attach:

> . . . redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary.

Finally, Official Form 10[1] requires the claimant to specify whether the claim includes "interest or other charges in addition to the principal amount of the claim" and to attach an "itemized statement of interest or charges."

Bankruptcy Rule 3001(c) is designed to provide a reviewing party with "fair notice of the conduct, transaction and occurrences that form the basis of the claim," In re

---

[1] Rule 3001(a) requires that a proof of claim "conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). Furthermore, Rule 9009 states that "the Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate." Fed. R. Bankr. P. 9009. However, neither a procedural rule nor official form may contravene an applicable statutory provision. Fed. R. Bank. P. 9009; 28 U.S.C. § 2075.

6

O'Brien, 440 B.R. 654, 662-63 (Bankr. E.D. Pa. 2010). This aids parties in interest in ascertaining the basis and accuracy of the claim and deciding whether the claim should be contested. In re Motels of America, Inc., 146 B.R. 544, 545-46 (Bankr. D. Del. 1992) (citing 3 COLLIER ON BANKRUPTCY ¶ 501.1, at 501–6 (1992)); In re McCarthy, 2004 WL 5683383, at *5 (Bankr. E.D. Va. 2004).

A credit card debt is widely accepted as being a claim based upon a "writing"; under Rule 3001(c), a claimant must file the writing upon which the claim is based. In re O'Brien, 440 B.R. at 661 (citations omitted). However, Official Form 10 liberalizes the filing requirement.[2] While it first directs the claimant to attach copies of supporting documents (such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements), it then provides: "You may also attach a summary." Official Form No. 10, ¶ 7.

Despite these authorities, or perhaps because of them, the case law widely diverges as to what is required to be included in the claim to support a credit card debt: the card agreement, a transactional record itemizing the charges, or both. In re O'Brien, 440 B.R. at 661 (citing In re Irons, 343 B.R. 32, 40 (Bankr. N.D.N.Y. 2006).

Another complication contributing to the confusion is the tendency of credit card claimants to file 'summaries' containing little more information than what is found in the proof of claim form itself. There is a general consensus in the case law that the claimant's decision to produce a summary does not materially alter the Rule 3001 documentation standard. However, there is a wide variance in the case law as to just what this means. Some courts, based upon the creditor's signature on the claim and the

---

[2] The Official Form is incorporated in Rule 3001(a).

7

criminal penalties for filing a false claim seem satisfied with minimal information. See In re Habiballa, 337 B.R. 911, 915 (Bankr. E.D. Wis. 2006); see also In re Cluff, 313 B.R. 323, 338 (Bankr. D. Utah 2004). Other courts point out that "[t]he requirements of Rule 3001(c) and Official Form 10 are meaningless unless they require sufficient documentation that has some evidentiary import and establish something other than the same conclusory allegations set forth in the proof of claim form itself." In re Shank, 315 B.R. 799, 810 (Bankr. N.D. Ga. 2004); In re McCarthy, 2004 WL 5683383.

A final point of contention exists over the documentation (or summarization) required to support an assigned credit card debt by the current holder. In re O'Brien, 440 B.R. at 661 (citing In re Minbatiwalla, 424 B.R. 104, 113 (Bankr. S.D.N.Y. 2010)). Some courts, again relying on the creditor's signature on the claim and the criminal penalties for filing a false claim, appear satisfied by the mere representation of the assignment. See In re Habiballa, 337 B.R. at 915; see also In re Cluff, 313 B.R. at 338. Others, in recognition that the claim is to provide fair notice of the "conduct, transaction and occurrences that form the basis of the claim[s]," In re O'Brien, 440 B.R. at 662-63, require that either the assignment documents be produced, In re Armstrong, 320 B.R. 97, 106 (Bankr. N.D. Tex. 2005); In re O'Brien, 440 B.R. at 662-63 (citing In re Sandifer, 318, B.R. 609, 611 (Bankr. M.D. Fla. 2004)), or the chain of title be summarized, In re O'Brien, 440 B.R. at 663. The same principle applies to claims and summaries filed by servicing and collection agents of the original creditor. See, e.g., In re Hughes, 313 B.R. 205, 210 (Bankr. E.D. Mich. 2004).

I agree with those cases requiring sufficient documentation to provide fair notice of the conduct, transaction and occurances underlying the claim. Just how that standard

8

is met will vary depending on the facts presented. No particular documentation is required in all cases, although account statements are usually sufficient to satisfy most questions about the claim. I also agree with courts holding that if a summary is to be employed in lieu of the documents, it should supply equivalent evidentiary import. More is required than the same information contained in the claim form or petition. Conclusory allegations are insufficient. Finally, where the claim has been assigned, either by absolute transfer or for collection purposes, the assignment documents or a summary identifying the basis and particulars of the same should be attached to the claim.

> B.  Were the AIS/FIA proofs of claim executed and filed in accordance with the Rule 3001 and Official Form 10?

Against this legal backdrop we turn to the claims filed by AIS/FIA in the Stupke and S&A cases. Since each set of claims, original and amended, is substantially identical among the cases, they can be discussed together.

> 1.  **Original Claims**

AIS/FIA's original proofs of claim provide minimal information: the date, the creditor's name and address, an internal reference number, and an account balance. AIS/FIA has forgone producing writings supporting its claims in favor of a one-page summary that provides little more information than that found in the proof of claim form itself. The account open date is insufficient to identify the claim or the claimant.

There is no description of the original cardholder agreement and no itemization of charges. The Official Form 10[3] requirement that a claimant specify whether its claim includes "interest or other charges in addition to the principal amount of the claim" is ignored and no "itemized statement of interest or charges," is found.

---
[3] See supra note 1.

9

As to the claimant's identity, the Statement of Accounts contains the briefest of assertions about the relationships: "FIA Card Services, N.A. as successor in interest to Bank of America, N.A. (USA) and MBNA America Bank, N.A. by American InfoSource L.P. as its agent." No details are provided about how FIA is a successor in interest to Bank of America or MBNA. Nor is the agency relationship between AIS and FIA described.[4]

The original claims do not provide "fair notice of the conduct, transaction and occurrences that form the basis of the claim." Without making assumptions, a person examining these claims could not ascertain whether a debt is owed or whether the claimant is the proper party to assert it. They do not substantially comply with Rule 3001 or Official Form 10.

## 2. Amended Claims

The amended claims filed by AIS/FIA are basically identical to the originals (including the Statements of Accounts), but for their inclusion of copies of the borrowers' prepetition monthly account statement(s). These statements detail account charges for the given month, include interest rate information, and document the account balances near the date of bankruptcy. Apart from the months for which statements are provided, these amended claims do not itemize interest charges or detail the composition of the account balances (e.g., they do not differentiate between charges, interest, and account

---

[4]FIA is a former subsidiary of MBNA and a present subsidiary of Bank of America. Bank of America acquired MBNA back in 2006. Given that these cases were filed in Charlotte, N.C., where Bank of America is headquartered, it is likely that a trustee would know the relationship between these companies. Whether a creditor or debtor would is more questionable. The contractual agency relationship between FIA and AIS would not be a matter of common knowledge.

fees).[5]  These amended claims offer no more details about the relationships between AIS, FIA, and Bank of America than the original claims.

Even so, the statements provide assurance of the claims' validity.  In fact, many courts expressly require that a copy of the last account statement be attached to the claim in order to document the same.  In re McCarthy, 2004 WL 5683383, at *8.   And  as a practical matter, the fact that the claimant has access to such statements goes a long way towards establishing that it is in fact the holder.

While the amended claims are still not entirely compliant with the Rule and Form, the inclusion of these statements takes these claims close to establishing the validity of the obligation asserted.

    **C.**    **If neither the original nor the amended claims were compliant with Rule 3001/Official Form 10, should these claims be disallowed under Section 502?**

The fact that the AIS/FIA proofs of claim are not substantially compliant with Rule 3001 and Official Form 10 does not automatically mean they are to be disallowed.  Absent objection, a filed claim is presumptively valid.  11 U.S.C. § 502(a).  Code Section 502 specifically lists the bases upon which a claim may be disallowed.  11 U.S.C. § 502(b).  Insufficient documentation is not one of the enumerated grounds.  Consequently, a majority of courts have held that "failure to comply with Rule 3001 is not, by itself, grounds for disallowance."  In re O'Brien, 440 B.R. at 663; In re Andrews, 394 B.R. 384, 389 (Bankr. E.D.N.C. 2008); In re McCarthy, 2004 WL 5683383, at *5; contra, In re Kirkland, 572 F.3d 838 (10th Cir. 2009).

---

[5] As to the S&A business cards, it is not clear on this record whether any such charges were included in the claims. The account statements provided do not reflect any such charges.

11

Rather, noncompliance with Rule 3001 and Official Form 10 removes the presumption of validity such that the creditor bears both the burden of going forward and the burden of persuasion.[6] In re Porter, 374 B.R. 471, 483 (Bankr. D. Conn. 2007); In re Tran, 369 B.R. 312, 317-18 (S.D. Tex. 2007).

While the case law is far from uniform on this point, this Court interprets this to mean that if an objection is filed, and the objecting party has a reasonable basis[7] to question the claim or the claimant, the claimant cannot simply rest upon its claim.[8] In these circumstances, if the claimant fails to respond, the objection will likely be sustained.[9]

However, in most circumstances, that is not what happens. Typically, courts permit a claimant to amend its claim to cure a lack of documentation, and it exercises that latitude to cure the claim deficiencies. In re Stoecker, 5 F.3d 1022, 1028 (7th Cir. 1993) (stating creditor should be allowed to amend an incomplete proof of claim, provided that other creditors are not harmed by the belated completion of the filing); Biscayne 21

---

[6] While the burden of going forward may shift during the claims objection process, the claimant always bears the ultimate burden of persuasion to establish validity and claim amount. In re Gulfport Pilots Ass'n, Inc., 434 B.R. 380, 388 (Bankr. S.D. Miss. 2010); In re Kreisler, 407 B.R. 321, 325 (Bankr. N.D. Ill. 2009); In re Keefer, 2009 WL 1587593, at *2 (Bankr. N.D. Ohio 2009).

[7] Many published cases involve opportunistic attempts by debtors to disallow claims in Chapter 13 cases based on nothing more than technical failure to comply with the Rule. The case law rightly overrules such objections. O'Brien 440 B.R. at 664. Where the claim is asserted by the original creditor, the claim amount corresponds to the amount scheduled by the debtor, and the objecting party is the debtor, there would appear to be no reasonable reason to challenge the claim. Conversely, if no corresponding debt was scheduled, if the claimant's relationship to the original card issuer is not clear, if the objecting party is the trustee, and/or the underpinnings of the claim are in question, closer adherence to the Rule will be required.

[8] Since the Rule cannot alter Section 502, an objection based on lack of documentation is not a sufficient basis to disallow a proof of claim. Moreover, the failure to provide documentation does not mean that the debtor does not owe the money to the creditor. In re Canlas, 2008 WL 4736350 (Bankr. E.D. Va. 2008).

[9] As O'Brien notes, it is possible for a proof of claim to be noncompliant with Rule 3001 but still possess sufficient indicia of its validity and amount to require the objector to bear the burden and expense of responding with contrary evidence. See O'Brien, 440 B.R. at 664.

12

Condominium Association, Inc. v. South Atlantic Financial Corp. (In re South Atlantic Financial Corp.), 767 F.2d 814, 819 (11th Cir. 1985) (finding creditor need not timely file a letter perfect proof of claim, and amendment is freely allowed to cure a defect, to describe the claim with greater particularity, or to plead a new theory of recovery); but see In re Tran, 369 B.R. at 321; In re DePugh, 409 B.R. 84 (Bankr. S.D. Tex. 2009)(Claimant denied leave to amend claim due to its systemic disregard of Rule 3001).

Alternatively, the claimant may seek to prove up its claim at the objection hearing, although that is financially disadvantageous to both the claimant and the objecting party.

Here, while its original claims were substantially deficient, AIS/FIA responded to the Trustee's objections with amended claims that are close to being rule compliant. Any lingering concerns by the Trustee about the amended claims' remaining deficiencies (e.g., the claimant's relationship to the account or the sums sought by the claim) were satisfied by its inclusion of monthly account statements.[10]

### D. Should sanctions be imposed upon a claimant who makes a practice of filing deficient claims?

The Trustee's bottom line objection in these cases is not as to whether the amended claims were allowable. Rather, his beef is with the fact that it took a claims objection to get AIS/FIA to properly document its claims.

An increasing number of consumer creditors make a practice of providing minimal information in their original claims. These claimants typically provide additional account information only after a written inquiry is posed and sometimes only after a claim objection is filed. This practice increases the claimants' profits, in that it

---

[10] At hearing, the Trustee acknowledged that he likely would not have objected to these claims had AIS/FIA attached the account statements to its original proofs of claim.

13

often avoids the costs of producing the supporting documentation. The Trustee sees a great inequity in one creditor reducing its costs by purposely filing deficient claims, when this practice serves to increase the costs of the trustee and thereby other creditors.

The Trustee makes a good point. Recent developments in credit card finance have put a great deal of pressure on the bankruptcy system. The days when most lenders issued credit and collected their own accounts are long gone. Credit card debt is now a financial commodity with these liabilities sold and often resold in bulk. Even those credit card companies which retain their accounts routinely administer them through third-party servicers and employ collection agents (often several agents for the same accounts) to collect those accounts.

Such assignments, whether for collection or absolute sale, are facilitated by portable electronic account records. When credit card accounts are assigned, the underlying written account documents (e.g., the signed card agreements) are not usually transferred and may well have been destroyed. Indeed, one excuse credit card claimants give for not attaching source documents to their claims is that they simply do not possess them; even the account statements sent to the debtor just before bankruptcy are often said to be unavailable. Memorandum from Hon. Laura Taylor Swain, Chair of Advisory Committee on Bankruptcy Rules, to Hon. Lee H. Rosenthal, Chair of Standing Committee on Rules of Practice and Procedure (May 27, 2010).

The increasing likelihood that a credit card claim is being collected by someone other than the original creditor—and often one without all of the account records—has predictable negative effects on the administration of bankruptcy cases. As our sister courts in Virginia and Eastern North Carolina have observed, "the uncontrolled practice

14

of filing claims with minimal or no review is the new development that presents a challenge for the bankruptcy system." In re Falwell, 434 B.R. 779, 786 (Bankr. W.D. Va. 2009) (quoting In re Andrews, 394 B.R. at 387).

Another Fourth Circuit bankruptcy court lamenting these problems noted that its "claims registry has become plagued with stale claims . . . ." In re Dorsey, 2008 WL 2511897, at *2 (Bankr. D. Md. 2008). It pointed out the natural effects of this affliction: "This trend is particularly disheartening where . . . these time-barred claims, purchased for pennies on the dollar, are being allowed and paid at the same rate as otherwise enforceable claims." Id.

As the Dorsey court points out, such claims practices can lead to time-barred or invalid claims competing with meritorious creditor claims. At best, credit card claimants who fail to adequately investigate or document their claims shift the costs of doing so to other creditors as the bankruptcy trustee is forced to spend time and limited estate monies investigating and objecting to deficient proofs of claim.

AIS/FIA has argued with great indignity that the Federal Rules of Bankruptcy Procedure are intended "to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001. That is certainly true. However, these Rules must be interpreted in a way that provides efficiencies to all parties, not just credit card claimants like AIS/FIA. Some may find it unfair to require a claimant to expend money to demonstrate a right to recover on its claim, see AIS/FIA's Memorandum of Law at 7 (citing In re Shank, 315 B.R. at 813-14), yet it would seem even more unfair to burden all creditors with the costs of extracting proof of a deficient claim's legitimacy or of that claimant's bona fides.

15

That said, it would not be appropriate to consider sanctions in the present cases. First, as noted, the case law in this area varies widely as to the documentation or summarization required to support a credit card claim. As AIS/FIA suggests, a number of courts approve of the practice of creditors filing minimalist claims and amending them after an objection is made. On the other hand, given the harm occasioned by such practices, several courts have concluded that sanctions may be imposed on claimants who intentionally disregard the Rule. DePugh, 409 B.R. at 111; In re Cirder, 312 B.R. 630, 634 (Bankr. M.D. Tenn 2004)(Bankruptcy court is given wide discretion to sanction a party for failure to comply with court orders and rules); Minbatiwalla, 424 B.R. at 120.

The undersigned generally agrees that where a claimant systemically violates the Rule in bad faith, sanctions may be imposed. However, our cases are not ripe for any such relief for two reasons. First, the Trustee has not pled a demand for sanctions. Rather, he seeks to establish precedent as to what is required in this judicial district to document a credit card claim. Given this, and as a matter of due process, the Court is not inclined to wade into the sanctions issue.

A second reason mitigates against such an inquiry. It appears that the rules regulating credit card claims are about to change. Poorly documented credit card claims in bankruptcy cases have become such a widespread problem that the Judicial Conference has felt compelled to weigh in on the matter. At the moment, the Rules Committee has promulgated proposed amendments to Rule 3001, designed to specify what constitutes adequate "supporting information" for credit card claims. Proposed Bankruptcy Rules and Form Amendments, UNITED STATES COURTS, http://www.uscourts.gov/rulesandpolicies/federalRulemaking/Published Rules.aspx.

16

Drafts have been issued, comments solicited, further revisions made, and the proposed rules republished in August 2010.  Assuming that these are approved by the Judicial Conference and the Supreme Court, and if Congress takes no action otherwise, those amendments will take effect on December 1, 2011.

Favoring the Trustee's position, these provisions would require claimants like AIS/FIA to provide more detailed information in their claims.  In lieu of the "writing" required by Rule 3001(c)(1), a new subpart will require the following information in claims based on an open-end or revolving consumer credit agreement:

> (i) the name of the entity from whom the creditor purchased the account;
> (ii) the name of the entity to whom the debt was owed at the time of the last transaction on the account by an account holder;
> (iii) the date of the last transaction on the account by an account holder;
> (iv) the date of the last payment on the account;
> (v) the date on which the account was charged to profit and loss.

On the other hand, the proposed rule changes respond to the credit card community's concerns about requiring attachment of actual account documents to proofs of claim:

> (B) On written request, the holder of a claim based on an open-end or revolving consumer credit agreement shall provide a party in interest the documentation specified in paragraph (1) of this subdivision.

In short, the proposed rule would require the credit card claimant to provide greater information in its initial claim. Then if the reviewing party is unsatisfied with the showing, additional documentation may be obtained through   written request of the

17

claimant. Thus the Rules Committee seeks to balance the informational needs of bankruptcy case parties against the electronic realities of the credit card claims industry.

**Conclusion**

Returning to our parties desire to establish district precedent, it would appear that such directions are likely to be of limited utility given that Rule 3001 is likely to be amended, and since the question whether a claim meets the Rule 3001 requirements or ultimately is allowable under Section 502 is a fact-driven inquiry.  However, this court will attempt to summarize what has been said above.

 A proof of claim should to provide fair notice of the conduct, transaction and occurrences underlying the claim.  No particular documentation is required in all cases to support the claim, be it card agreement or transactional record. This court recommends the inclusion of the last prepetition account statement, given that this usually satisfies the concerns of the party reviewing claims.

If a summary is to be employed in lieu of  documents, it contain should supply equivalent evidentiary import. Regurgitation of information already found in the claim itself or in the bankruptcy petition does not advance the claim. Nor do conclusory allegations constitute a summary. Where the claim has been assigned, either in an absolute transfer or for collection purposes, the assignment documents or a summary identifying the basis and particulars of the same should be attached. Finally, even a claim that fails to comply with Rule 3011 should not be objected to if there is no reasonable basis to question the claim or the claimant's identity.

**ACCORDINGLY,** the Trustee's Objections are **OVERRULED.**

**SO ORDERED.**

18

This Order has been signed electronically.   United States Bankruptcy Court
The judge's signature and the court's seal
appear at the top of the Order.